Albert **BRICK** and Samuel Intrater, Plaintiffs-Appellees,

v.

Charles S. **HIRSCH**, Defendant-Appellant,

Albert **BRICK** and Samuel Intrater, Plaintiffs-Appellees,

v.

Arthur **GETTLEMAN** and Frank E. Gettleman, Defendants-Appellants.

Nos. 14302–14303.

United States Court of Appeals Seventh Circuit.

April 2, 1964.

Rehearing Denied May 7, 1964.

Frank J. McGarr, Edward Brodkey, Chicago, Ill., for appellants.

George B. Collins, Chicago, Ill., for appellees.

Before HASTINGS, Chief Judge, CASTLE and KILEY, Circuit Judges.

CASTLE, Circuit Judge.

Plaintiffs-appellees, Albert Brick, a Washington, D. C., attorney, and his partner, Samuel Intrater,[1] brought suit in the District Court against defendants-appellants, Charles S. Hirsch, Arthur Gettleman and Frank E. Gettleman to recover on an alleged contract under which Brick was to be paid one-third of any fee received by the defendants in connection with certain United States Tax Court litigation.[2]

The defendants by their answers denied any agreement was ever made with

---

1. Samuel Intrater is a party solely by virtue of his partnership with plaintiff, Albert Brick.

2. The second count of the complaint sought punitive damages based on alleged conspiracy to defraud plaintiffs and to deprive them of the fee through false and fraudulent misrepresentations. A third count, added by amendment, sought a declaratory judgment that plaintiffs are entitled to receive one-third of the net recovery in a pending state court suit brought by defendant Hirsch against the clients in the Tax Court litigation for $1,500,000.00 in fees allegedly due and unpaid.

plaintiffs relative to fees in the tax cases involved and averred that such services as Brick might have performed therein were not on a basis which entitled plaintiffs to remuneration.

The cause was tried to the court without a jury. On the day following conclusion of the presentation of evidence, and after hearing the arguments of counsel, the District Court announced its findings and conclusions from the bench. The court found in substance, that there was an agreement to employ Brick in connection with the tax litigation and a definite arrangement with him as to a one-third share of whatever fees were collected from the taxpayer clients. The court in effect denied plaintiffs' claim for punitive damages.

The court entered a judgment order or decree declaring plaintiffs are entitled to recover one-third of all funds received by any one or all of the defendants as a result of services performed by them in connection with the tax cases, including any and all sums recovered in a pending state court action in which defendant Hirsch sought recovery of an additional $1,500,000.00 in fees from the taxpayer clients; ordering defendants to account forthwith before a designated Master in Chancery for any and all such sums already received, and to account for sums received out of the state court action after its disposition; and enjoining defendants from doing any acts, including certain acts specifically designated, to deprive plaintiffs of the benefits of the declaratory judgment finding them entitled to one-third of the fees received by defendants for services in the tax matters.

Defendant Hirsch's appeal (No. 14302) is consolidated with the appeal prosecuted by the Gettlemans (No. 14303) and both will be considered in one opinion. The main contested issues precipitated by the appeals, although they encompass some additional subsidiary issues advanced by defendants, may be summarized as follows:

(1) Whether the District Court's findings of fact are so deficient that this Court cannot satisfactorily determine the basis and reasons for the court's decision.

(2) Whether the court's finding and conclusion that there was an agreement entitling plaintiffs to one-third of the fee received from the taxpayer clients is clearly erroneous.

(3) Whether the judgment order is ambiguous and impossible of application.

(4) Whether the injunctive relief granted is unwarranted.

The record discloses the defendants are Illinois attorneys with offices in Chicago. John Town, Inc., an Illinois corporation, and Paul Rowatt became their clients in connection with substantial tax liability[3] asserted against said clients by the government. Issues relative to amortization of a perfume franchise were involved. The Gettlemans, who practiced law as a partnership, did not specialize in tax matters and had brought defendant Hirsch, a tax specialist, into the matter.

Plaintiff Brick, who had handled a substantial number of matters before the Tax Court in which he had effected settlements, was listed on the Gettleman's stationery as Washington counsel. He met Hirsch through Arthur Gettleman in 1956 when they became associate counsel on a tax matter referred to as the Wessel case. Brick testified that after previous discussions, which had commenced in 1957, with the defendants about the Dana cases, he met in conference with the defendants in Chicago on January 17, 1958, at Gettlemans' office. He testified that all of the defendants were present and that Frank Gettleman "said 'we are going to get one-third of the fee, Mr.

3. The Tax Court cases, originally four in number, are referred to in the record as the "Dana cases" or "perfume cases". Before conclusion of the tax litigation by settlement in 1959 two additional cases involving similar liability asserted in connection with subsequent tax periods were added. The total asserted liability, in excess of $6,000,000.00, was settled for $1,052,371.98.

Hirsch is going to get one-third of the fee, and you are going to get one-third of the fee', and we agreed upon that". Thereafter, at defendants' request, Brick entered his appearance, along with Hirsch, in the Tax Court in connection with the removal of attorneys who theretofore had been represented the taxpayer clients in the pending litigation.

The defendants testified that no agreement with plaintiff as to fees was made; that Frank Gettleman was not present at the January 17, 1958 conference; that the meeting related to a different matter, the Wessel case; and that Brick entered his appearance in the Dana tax matters solely as a favor to the defendants.

At the time of the January conference, the Gettlemans and Hirsch had already been retained under a written agreement to represent John Town, Inc., and Paul Rowatt in the tax matter on the basis of a stipulated hourly rate with an oral understanding that a "bonus" would be paid on the matter's conclusion. The Gettlemans received the first payment under the agreement as a retainer. On March 6, 1959, a second agreement was executed between Hirsch and the taxpayer clients from which the Gettlemans were omitted completely.

The record discloses Brick was aggressive in seeking to become associated in the Dana cases. After filing his entry of appearance he performed all of the services requested of him. Among other things, he attended to the filing of a certification of a change in name of the corporate client, corresponded with Hirsch concerning a new rule governing settlement authority within the Internal Revenue Service, reviewed an accountant's analysis relative to earlier phases of the tax matter, and in his correspondence with Hirsch concerning the matter expressed continued interest and requested further details. The defendants characterize Brick's services as minimal in nature but it appears that he did everything requested of him and made requests for such additional documents as would aid him in further preparation of the cases. In September of 1959, shortly before the Dana cases were settled, Hirsch prepared and sent to the Tax Court a motion, filed *per se* by the taxpayer clients, requesting removal of Brick as counsel. The motion was allowed as a matter of course. When Brick wrote Hirsch concerning the notice of the clients' motion for Brick's removal as counsel, Hirsch replied some three weeks later:

"As to Dana, forget it. The issues have been closed as far as I am concerned for a long time. Frank never was able to do much with the individual and I question whether we should ever have become interested in it."

Defendants received over $25,000.00 in fees from the clients and after the settlement Hirsch brought suit in a state court for an additional $1,500,000.00 in fees.

The fact that the trial judge at the conclusion of arguments of counsel proceeded to deliver his findings of fact and conclusions of law in open court, dictating them to the court reporter, may well account for the co-mingling of findings of fact with conclusions of law and a lack of the preciseness and specificity which is desirable. But in our judgment the findings and conclusions are not so deficient in content or expression as to leave any doubt in the mind of the Court as to the factual and legal bases for the District Court's decision. And, in view of this conclusion we do not deem it appropriate to remand the cause in order that the complained of shortcomings in the findings be remedied. George v. United States, 7 Cir., 295 F.2d 310, 311; George v. American Airlines, Inc., 7 Cir., 295 F.2d 311, 312–313; Cf. Whitson v. Aurora Iron & Metal Co., 7 Cir., 297 F.2d 106.

 Although no express findings as to credibility were made it is apparent the District Court resolved the question of credibility presented by the sharp and direct conflict in the testimony, in favor of the plaintiffs. Such conflicting testimony and any conflicting inferences which might be drawn from other evidence were for the resolution of the Dis-

trict Court, the trier of the facts. Whitson v. Aurora Iron & Metal Co., 7 Cir., 297 F.2d 106, 109; Loehde v. Wisconsin River Power Company, 7 Cir., 304 F.2d 433, 436. And, we perceive nothing in the facts and circumstances otherwise disclosed by the record, or in the documentary evidence presented, which requires that we reject the trial court's resolution of credibility for lack of substantial foundation—or which leaves us with a definite and firm conviction that a mistake has been committed. Cf. United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746. Moreover, we would point out in this connection that we have not deemed it necessary to set forth in the brief summary of basic facts we have related the details of conduct and admissions of the defendants disclosed by the record which afford ample foundation for the court's rejection of the critical portions of their testimony on the basis of credibility. Suffice it to say we find no error in this respect. The testimony of Brick was, in the light of the record's disclosures, substantial evidence to support the court's ultimate finding and conclusion that defendants agreed that in return for his anticipated services he receive a one-third share of the fees defendants would obtain from the taxpayer clients in connection with the tax matter involved.

 Defendants assert the judgment order or decree entered is ambiguous and impossible of application, contrary to the evidence, contrary to the findings of fact and clearly erroneous. In this connection defendants contend the decree requires payment to plaintiffs of one-third of the gross amounts received from the taxpayer clients in connection with the Dana cases. We do not agree. The decree adjudicates that plaintiffs are entitled:

> "to receive one-third of all funds received by any one or all of the Defendants *as a result of services performed by them* * * * including any and all sums recovered in the future by settlement or judgment [in the state court action]". (emphasis supplied.)

We believe it obvious the language of the decree refers only to a one-third share of the net fees defendants receive for their services. In the context in which it appears, and in the light of the findings and conclusions upon which the decree is based, the language employed cannot be considered as embracing amounts paid by the taxpayer clients in reimbursement of costs and expenses or to more than one-third of Hirsch's net receipts from the state court action after deduction of costs, expenses, and attorney fees he pays therein. And, contrary to defendants' contentions, we perceive no error in the court's inclusion of fees received or recovered in connection with the two cases embracing additional tax periods which were filed subsequent to the time defendants were first retained and subsequent to defendants' agreement with Brick. They represent but another portion of the same tax problem of the clients—an additional phase of the matter with respect to which they were furnished like legal representation.

 The decree, in our opinion, fixes a sufficient standard to guide the master in conducting the accounting to be made. The District Court retained jurisdiction for the purpose of enforcing the provisions of its judgment order or decree. Any issue precipitated by the master's rulings in such accounting will be subject to consideration by the District Court.

 From what the record discloses with respect to the conduct and activities of defendants, and in view of the magnitude of the recovery sought in the state court action, we are of the view that under the circumstances here involved there was a proper basis for the injunctive relief granted. It was proper to so protect distribution of the funds to be received and insure an accounting of those already received. The court found what it characterized as an "unusual situation" and tailored a remedy to fit. We are of the opinion that its failure

256

to couch its findings and conclusions in a manner relating directly to the injunctive remedy does not constitute such error as requires reversal.

We are not persuaded by the contentions of the defendants which we have discussed and although we have considered the remaining and subsidiary arguments they advance in support of their positions, and the cases cited and relied upon in connection therewith, we are of the view that none of them merit detailed discussion.

In each of the appeals the judgment order of the District Court is affirmed.

Affirmed.